IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

FILED
04 MAR -8 PM 1:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

ALICIA BAKER, et al., )
)
        Plaintiffs )
)
vs. ) CASE NO. CV02-HGD-0571-M
)
RAGLAND CLAY PRODUCTS, L.L.C., )
)
        Defendant )

**ENTERED**

MAR 0 8 2004

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

**MEMORANDUM OPINION**

The above-entitled civil action is before the court on the motion for summary judgment [Doc. #14] and the amended motion for summary judgment [Doc. #17] filed by defendant. This matter is before the undersigned based upon the consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73, Fed.R.Civ.P. Defendant, Ragland Clay Products, LLC (Ragland), has supported its motion for summary judgment with evidence [Docs. #14 and 22] and a brief [Doc. #21]. Plaintiffs, Alicia Baker and Tammy Miles, have filed evidence [Doc. #24] and a brief [Doc. #23] in opposition to the motion, and defendant has submitted a reply [Doc. #25].

### STANDARD OF REVIEW

This matter is considered by the court pursuant to the provisions of Rule 56, Fed.R.Civ.P. Summary judgment "shall be rendered forthwith if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986). Thus, summary judgment is appropriate where the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 332, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The substantive law governing the action determines whether an element is essential. *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510. A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of the pleading, depositions, answers to interrogatories, and admissions on file, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *see Brown v. Crawford*, 906 F.2d 667, 669 (11th Cir. 1990), *cert. denied*, 500 U.S. 933, 111 S.Ct. 2056, 114 L.Ed.2d 461 (1991).

This circuit clearly holds that summary judgment should be entered when the moving party has sustained its burden of showing the absence of a genuine issue of material fact when all the evidence is viewed in the light most favorable

2

to the non-moving party, *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir. 1983); *see also, Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512. The evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his or her favor. *Id.* at 255, 106 S.Ct. at 2514, *citing Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59, 90 S.Ct. 1598, 1608-09, 26 L.Ed.2d 142 (1970). It is, therefore, under this standard that the court must determine whether the plaintiffs can meet their burden of coming forward with sufficient evidence as to each material element of their claims sufficient to permit a reasonable jury to find in their favor.

Plaintiffs claim that defendant violated their rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, by failing to hire them because they are black females. [Doc. #1, Complaint; Def. Exh. 2, Baker Depo., at 20-21]. Defendant asserts that Baker and Miles were not hired because of their confrontational conduct. [Doc. #21, Def. Memorandum of Law, at 1].

**FACTUAL BACKGROUND**

Ragland Clay Products, LLC, is located in Ragland, Alabama, and mines, grinds and bakes bricks. [Pl. Exh. 3, Presley Depo., at 35]. William Presley was production manager at Ragland at the time of the events that form the basis of this suit and was the acknowledged decision-maker with regard to hiring employees for the brickyard. [*Id.* at 7, 12-13, 14, 15]. Anabeth Dunlap is the General Manager of Ragland. She works in the office where job applications are submitted. [Pl. Exh. 5, Dunlap Depo., at 8, 11]. Tara Reaves was an administrative assistant for Dunlap. [Pl. Exh. 4, Reaves Depo., at 7].

At the time of the events that form the basis of this litigation, Reaves' duties included providing job applications to persons seeking employment with Ragland. When a prospective employee would come in the office, she would give that person an application. According to Reaves, after the application was filled out, if Presley was available, Reaves would try to get him to interview the applicant at that time. [*Id.* at 8]. If Presley was unavailable, Reaves would make sure she had a telephone number where the applicant could be reached, and the application would be placed on Presley's desk. [*Id.* at 9].

The applications were kept in a tray until "the stack got too big and bothersome," which, according to Dunlap, was about every 30 to 45 days. [*Id.* at 9-10; Pl. Exh. 5, Dunlap Depo., at 24]. According to Reaves, Presley would cull the applications by picking out the ones he thought necessary to keep,

4

disposing of those he already tried to contact or who never came back in. [Pl. Exh. 4, Reaves Depo., at 10]. The older applications then were moved to a drawer in the back office. [Pl. Exh. 5, Dunlap Depo., at 24-25]. The oldest applications were kept on top of the stack. All of these applications going back to November 1996 were kept until December 2001 or January 2002 when Dunlap threw them away. [*Id.* at 25-26].

Applications are taken even when the company is not hiring. [Pl. Exh. 4, Reaves Depo., at 10-11; Def. Exh. 1, Presley Depo., at 31]. According to Presley, if he did not need anyone, he would tell Reaves to inform the applicants of that fact and to advise them to check back later or, if they could leave a telephone number, that he would call them. [Def. Exh. 1, Presley Depo., at 30]. When he needed to hire someone, Presley would sometimes, but not always, go back through the applications on file to contact a previous applicant. [*Id.* at 30-34]. He rarely had call-backs. Presley testified that he normally would hire an applicant at the time he or she put in the application. [*Id.* at 29]. However, he would always go through the applications he had before placing a newspaper advertisement for a position. [*Id.* at 34-35].

Ragland employs both men and women. [Def. Exh. 9, Presley Aff.]. Prior to the filing of this suit, only one black female had been hired in the past to work at Ragland: Lesa Williams was hired in 1999 for the "inside" job of stacking bricks as they came off the conveyer belt. [Pl. Exh. 9, Williams Aff.

5

dated July 1, 2002]. However, she was not assigned the inside job she believed she was hired for, and after cleaning houses her first day and working outside stacking bricks for the second day, she quit. [*Id.*]. According to Williams, she quit because the work caused her back to hurt badly. [Pl. Exh. 7, Williams Aff. dated August 29, 2002]. When Williams advised Dunlap she thought she had been hired to stack bricks on the inside, Dunlap told her that "only the men did that" [Pl. Exh. 9, Williams Aff. dated July 1, 2002], or that "they preferred not to let women stack the wet bricks on the inside." [Pl. Exh. 7, Williams Aff. dated August 29, 2002]. The only other black female hired at Ragland was Veneise Byers who was hired about four months after Baker and Miles filed suit. [Def. Exh 8, Byers Aff.].

Presley testified that he deals with "hundreds" of employees a year because of a high turnover rate. When asked to name persons recently hired to work as unloaders, Presley stated "I couldn't tell you their names because I deal with hundreds of people a year. I couldn't give you any specific name as to who I hired because they may last 15 minutes, and they may last an hour. I mean, it's just they come and go so fast till I can't be sure." [Def. Exh. 1, Presley Depo., at 46].

Alicia Baker submitted applications for work at Ragland in June 2001 and on September 5, 2001. [Def. Exh. 2, Baker Depo., at 252, 253, 255]. She sought the job of brick setter. [*Id.* at 17]. According to Baker, she and Miles

returned to Ragland in September 2001 and were advised that Ragland was not hiring. [Pl. Exh. 1, Baker Depo., at 23-25].

Tammy Miles submitted an application for work on June 25, 2001. [Pl. Exh. 2, Miles Depo., at 9, 11-12]. She testified that she was primarily interested in working as a brick setter but would take any job that was offered to her. [Def. Exh. 3, Miles Depo., at 146]. She returned to inquire about employment on September 5, 2001, accompanied by Baker.[1] [*Id.* at 11-14].

When Miles applied for a job with Ragland in June 2001, Reaves told her there were no openings but that she would be the next person hired. [Pl. Exh. 2, Miles Depo., at 8-9]. After filing their applications in June 2001, Miles and Baker went back to inquire about work at Ragland sometime between June and September 2001. Presley advised them he was not hiring at that time. [*Id.* at 13-14].

Presley claims that he did not know that Miles and Baker had submitted written applications for employment until September 5, 2001. [Def. Exh. 1, Presley Depo., at 16]. However, the evidence is construed in plaintiffs' favor. If it is assumed that Miles and Baker personally spoke to Presley about employment before September 5, 2001, he would have been on notice that they were interested in employment. Further, his own testimony reflects that

---

[1] Some of the factual assertions are disputed by defendant. However, for summary judgment purposes, all reasonable inferences are construed in favor of the non-moving party. Thus, where the facts appear to be in dispute, all justifiable inferences are drawn in favor of Baker and Miles, but *only* for purposes of summary judgment.

it was common practice for Reaves to bring persons who had submitted written applications for employment out to speak to Presley to determine the immediate availability of jobs. This is especially true given Presley's claim that he always reviewed applications prior to putting an ad in the local newspaper seeking employees. He submitted such an ad on August 9, 2001. [Pl. Exh. 3, Dunlap Depo., at Exh. 2]. Therefore, Presley knew or should have known that Miles and Baker had submitted applications for employment prior to September 5, 2001.

In August 2001, Carolyn Austin, a Caucasian female, came to Baker's house and asked Baker if she could borrow her steel-toed boots because Austin had gotten a job with Ragland. [Pl. Exh. 1, Baker Depo., at 84-85]. Austin was hired August 20, 2001. [Pl. Exh. 6].

Neither plaintiff ever was hired despite the fact that numerous others were hired for positions within the company during the time period from June to September 2001. Records obtained from Ragland reflect that Ragland hired 33 people between June 18 and September 4, 2001, the day before Baker and Miles returned to check on their June applications. [Pl. Exhs. 6 and 8]. It hired three people on June 25, 2001, the same day Miles applied. [*Id.*]. These same records reflect that two employees were hired on September 5, 2001, the date on which plaintiffs went back to Ragland to inquire about why they had not been hired and were advised there were no openings. [*Id.*]. None of the

employees hired from June 18 to September 5, 2001, was a black female. [Pl. Exh. 4].

Besides plaintiffs, four other black females applied for work with Ragland during the five years preceding the lawsuit. Lesa Williams, discussed above, was hired in 1999 but quit after two days. The remaining black female applicants were Belinda Foreman, Crystal Byers and Lana Holiday. [Pl. Exh. 7, Def. Answers to Pl. First Interrogatories, at Responses 3 and 4]. Ragland states that these individuals were not hired "because they sought positions which were not available or jobs for which they did not have the requisite skills." [*Id.* at Response 4].[2] Ragland does not advise which jobs these applicants applied for or whether they were the same positions sought by plaintiffs. Similarly, one of the reasons cited by defendant for not hiring plaintiffs is that, at the time plaintiffs applied for employment at Ragland, Ragland was not seeking applicants for the position for which they applied. [Doc. #17, Def. Amended Motion for Summary Judgment, at 4-5].

### DISCUSSION

Whether an employer intentionally discriminated against an employee or potential employee is a question of fact, which may be proved either through direct or circumstantial evidence. See *Green v. School Bd. of Hillsborough*

---

[2] Veneise Byers, a black female, was hired in July 2002, approximately four months after this lawsuit was filed. Therefore, her hiring presents no evidence favorable to defendant.

*County*, 25 F.3d 974, 977- 78 (11th Cir. 1994). "Direct evidence of discrimination is evidence, that, 'if believed, proves [the] existence of [a] fact in issue without inference or presumption.'" *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir. 1999) (quoting *Burrell v. Bd. of Trustees of Ga. Military College*, 125 F.3d 1390, 1393 (11th Cir. 1997)) (alterations in original).

Absent such evidence, a plaintiff may prove her case through circumstantial evidence, using the familiar burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and subsequent cases. Under this framework, the plaintiff initially must establish a *prima facie* case of discrimination. *See id.* at 802, 93 S.Ct. at 1824. By establishing a *prima facie* case, the plaintiff creates a rebuttable presumption that the employer unlawfully discriminated against her. *See United States Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 714, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983). The burden then shifts to the employer to rebut this presumption by producing evidence that its action was taken for some legitimate, non-discriminatory reason. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254-55, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). Should the employer meet its burden of production, the presumption of discrimination is rebutted, and the inquiry "proceeds to a new level of specificity," in which the plaintiff must show that the proffered reason really is a pretext for unlawful discrimination. *See id.* at

255-56, 101 S.Ct. at 1095-96. Although the intermediate burdens of production shift back and forth, the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the employee remains at all times with the plaintiff. *See id.* at 253, 101 S.Ct. at 1093; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000).

Plaintiffs have attempted to demonstrate discrimination by presenting circumstantial evidence sufficient to establish a *prima facie* case of discrimination. In a traditional failure-to-hire case, the plaintiff establishes a *prima facie* case by demonstrating that: (1) she was a member of a protected class; (2) she applied and was qualified for a position for which the employer was accepting applications; (3) despite her qualifications, she was not hired; and (4) the position remained open or was filled by another person outside of her protected class. *EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1273 (11th Cir. 2002).

Plaintiffs allege that they were discriminated against based on a combination of their race and gender, black and female. There is no evidence submitted which reflects that Ragland discriminates against females or blacks in general. There is ample evidence that the company has hired numerous black males and white females. [Pl. Exhs. 6 and 8]. However, as noted, plaintiffs allege that their membership in both a minority race and a minority

11

gender place them in a special protected class, the class of black females. Under this classification, a plaintiff establishes that the position was filled by persons outside her class by demonstrating that black females were not hired. A defendant cannot rebut a *prima facie* case of intentional discrimination against a black female by demonstrating that female employees as a whole were treated the same as all male employees or that black employees as a whole were treated the same as white employees. The focus is specifically on the treatment of black females. *Daniel v. Church's Chicken*, 942 F.Supp. 533, 538 (S.D.Ala. 1996) (citing *Jefferies v. Harris County Community Action Assoc.*, 615 F.2d 1025 (5th Cir. 1980)). In *Jefferies*, the Fifth Circuit recognized black females as a separate protected class. This holding is binding precedent in the Eleventh Circuit. *See Bonner v. City of Pritchard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*).

Thus, plaintiffs have established that they are members of a protected group, black females. There has been no claim that either was not qualified for the positions applied for at Ragland. The evidence reflects that the positions, when available, were labor-intensive and that both plaintiffs were capable of physical labor. The evidence, as viewed by the court for purposes of this motion, reflects also that both plaintiffs applied for positions with Ragland, which accepted applications on an on-going basis. There is no dispute that neither plaintiff ever was hired by Ragland. There is also no dispute that

Ragland hired other persons outside plaintiffs' class after plaintiffs made application with Ragland. Therefore, they have established a *prima facie* case of intentional discrimination under the *McDonnell Douglas* test. In order to rebut this *prima facie* case of intentional discrimination, defendant must produce a legitimate, non-discriminatory reason for its failure to hire plaintiffs.

No Positions Available

One of the reasons put forth by defendant for not hiring plaintiffs is its claim that, at the time they applied for employment, no positions were open. Ragland asserts that, at the time Miles and Baker applied, it had a full crew. [Def. Exh. 1, Presley Depo., at 36]. In its brief, Ragland asserts that its turnover is significant and that Presley usually needed an employee to start work immediately, often hiring "on the spot."

Ragland's assertion is without merit and verges on disingenuous. Unless Miles and Baker happened to walk into the Ragland office at the very minute someone quit or was fired, there is no way that they could have hoped to have been hired by Ragland. This manner of hiring could have the effect of assuring that there were never any positions available for anyone whom Ragland desired to avoid hiring, and it would present an insurmountable defense to claims of discrimination, even when evidence of intent otherwise might be overwhelming. Furthermore, if this were truly the way Ragland hired all of its personnel, there

13

would have been no need to place an ad in the newspaper seeking employees, as Ragland did in August 2001.

The Eleventh Circuit has recognized that a broader form of discrimination may arise where a decision-maker disseminates information about available positions through informal channels, stating that "when an employer uses such informal methods it has a duty to consider all those who might reasonably be interested" in the available position. *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1133 (11th Cir. 1984). When other employees are not aware of the position's availability, and thus have no notice of or opportunity to apply for a position, it is "legally insufficient and illegitimate" for the employer to assume that they are not interested in it. *Harris v. Birmingham Bd. of Educ.*, 712 F.2d 1377, 1383 (11th Cir.1983), cited in *Walker v. Prudential Property and Cas. Ins. Co.*, 286 F.3d 1270, 1275-76 (11th Cir. 2002).

Where a defendant uses no formal procedures for posting notice of available promotions or for determining who would be offered the promotion and, instead, relies on "word of mouth" and informal review procedures, the Eleventh Circuit has recognized that such subjective procedures can lead to racial discrimination, both because important information may be available only to whites and because such procedures place no check on individual biases. For this reason "[t]he failure to establish 'fixed or reasonably objective standards

14

and procedures for hiring' is a discriminatory practice." *Carmichael*, 738 F.2d at 1133.

The evidence reflects that Ragland hired three people on June 25, the same day Miles applied. It also hired two people on September 5, the day Baker and Miles went back to check on their applications. In fact, Ragland hired more than two dozen people between June 25 and September 4, 2001. None were black females. These facts, combined with Ragland's "informal" hiring practices, is sufficient evidence of pretext to allow a jury to find in favor of plaintiffs on the issue of pretext or to create a genuine issue of material fact with respect to whether defendant's asserted reason for not hiring plaintiffs was a pretext for discrimination.

Confrontational Conduct

The decision-maker in this case, William Presley, asserts that he did not hire plaintiffs based on their conduct in the Ragland office on September 5, 2001, and because of Baker's "pattern of conduct" which reflected that she was "a troublemaker." [Doc. #21, Def. Brief in Support of Motion for Summary Judgment, at 17].

Presley testified that he recalls at least two occasions when he heard Baker arguing with her husband, a Ragland employee at that time, in Ragland's parking lot "about whether he was going to give her a check or whatever." [Pl.

15

Exh. 3, Presley Depo., at 52]. Presley testified that this dispute did not concern him other than that they spoke with their voices raised. [*Id.*].

A couple of minor domestic disputes in the Ragland parking lot do not make a very strong case for refusing to hire someone in a business that uses a lot of unskilled labor and has the high turnover rate asserted by defendant. Furthermore, Baker's husband worked for Ragland at the time of these disputes, yet there is no evidence that they were considered serious enough to warrant Ragland taking any action against him. In addition, there is no evidence that Miles had any involvement in these disputes. Therefore, Baker's alleged conduct is not a reason for denying Miles employment in any case.

On another occasion, in about August 2001, there was an incident which involved Baker's daughter not being selected for the school cheerleading squad and allegedly culminated in a confrontation at Ragland's office between Baker and Tara Reaves. However, though Baker was angry, she was controlled and was not loud on that occasion. [Def. Exh. 5, Reaves Depo., at 37-38].

Presley was not present for this incident, and his only knowledge of it was a "general conversation" with Reaves when she told him that "[t]here was an incident at school and Alicia claimed racism or something there, something to do with cheerleaders." [Pl. Exh. 3, Presley Depo., at 83-84]. This evidence does nothing to support Ragland's claim that Baker was a troublemaker.

16

Presley's knowledge of this incident is so limited that it is reasonable to infer that it did not play a part in his decision not to hire plaintiffs.

Furthermore, Presley did not testify that his decision not to hire Baker or Miles had anything to do with these incidents. In fact, he testified that he did not hire them "strictly" because of their conduct in the Ragland office on September 5. [Pl. Exh. 3, Presley Depo., at 15].

The main incident cited by Ragland as its reason for not hiring plaintiffs occurred on or about September 5, 2001. On that date, Baker and Miles went to the brickyard to inquire about the applications they had submitted in June 2001. [Pl. Exh. 1, Baker Depo., at 23]. Baker again filled out an application for Tara Reaves. [*Id.*].

According to Presley, Baker and Miles came into the Ragland office on that date and "demanded" to be hired. [Pl. Exh. 3, Presley Depo., at 18]. He testified that he heard Baker slap the top of the counter and address Reaves with a loud voice and foul language, including using the words "bitch" and "motherfucker." [*Id.* at 19, 23-24]. Presley testified that he walked to the doorway and told Baker and Miles that it was time for them to leave, and they complied. [*Id.* at 26].

Baker admits going into the Ragland office on that date and acknowledges that she told Reaves that she believed Ragland was discriminating against her for its failure to hire her or any black females. [Pl.

17

Exh. 1, Baker Depo., at 30]. Though admittedly upset, Baker and Miles deny that Baker became hostile, cursed, shouted at anyone or demanded to be hired. [*Id.* at 25-27, 225-27; Pl. Exh. 2, Miles Depo., at 19, 37-38]. They both deny that Presley told them to leave the premises. [Pl. Exh 1, Baker Depo., at 34; Pl. Exh. 2, Miles Depo., at 39].

Miles testified that she asked Reaves why Ragland would hire a white woman but would not give her or Baker a chance. [Pl. Exh. 2, Miles Depo., at 15-16]. Miles told Reaves that she thought that Ragland was discriminating against her and that she was going to complain to the EEOC. [*Id.* at 7-8, 19]. However, according to both Presley and Reaves, Miles did not raise her voice or curse. [Pl. Exh. 3, Presley Depo., at 24, 52; Pl. Exh. 4, Reaves Depo., at 23]. Presley's only asserted reason for his failure to hire Miles was because she made no effort to try to stop Baker from acting in the disruptive manner he claims she acted. [Pl. Exh. 3, Presley Depo., at 53]. Given the large number of job openings between June 2001 and September 2001 (when the asserted reason for not hiring plaintiffs occurred), this explanation is weak, at best.[3]

---

[3] Defendant has submitted plaintiffs' statements to the EEOC investigator as evidence to contradict plaintiffs' version of the events of September 5, 2001. However, these statements are not directly contradictory to plaintiffs' own testimony. Each admits being "pissed off" at not being hired. However, they deny being disruptive. Therefore, this evidence does not negate the evidence of pretext offered by plaintiffs.

### CONCLUSION

There are many disputed factual issues as to the events in this case. Because the outcome depends on a determination of these factual issues, summary judgment is not appropriate. Therefore, defendant's motion for summary judgment and amended motion for summary judgment are due to be denied.

A separate order in conformity with this Memorandum Opinion will be entered contemporaneously herewith.

DONE this _____ 8th _____ day of March, 2004.

HARWELL G. DAVIS, III<br>
UNITED STATES MAGISTRATE JUDGE